UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 21-CV-22359-ALTMAN/REID

CHIQUITA BRANDS INTERNATIONAL,
S.A.R.L.,

    Petitioner,

v.

ZAMHERN, S.A.,

    Respondent.
_____/

**REPORT AND RECOMMENDATION GRANTING
PETITIONER'S MOTION FOR WRIT OF BODILY ATTACHMENT**

**THIS CAUSE** comes before the Court on Petitioner's Motion for Writ of Bodily Attachment (the "Motion") [ECF No. 67]. The Honorable Roy K. Altman referred this matter to the Undersigned for a Report and Recommendation. [ECF No. 68]. The Court has considered Petitioner's Motion for Writ of Bodily Attachment [ECF No. 67], Petitioner's Supplemental Memorandum in further Support of its Motion for Writ of Bodily Attachment [ECF No. 78] and heard argument from Petitioner on the Motion for Writ of Bodily Attachment on November 8, 2024, *see* [ECF No. 74], as well as on November 19, 2024. *See* [ECF No. 79]. The Court, having reviewed the record, having heard argument from Petitioner,[1] and being fully apprised in the premises, hereby **RECOMMENDS** as follows:

---

[1] Respondent has received service of process of all submissions in this matter in the manner specified by the Court's order granting alternative service, *see* [ECF No. 38], and has not made an appearance or filed any papers with the Court.

Petitioner seeks the entry of a writ of bodily attachment against nonparty Jose Hernán Zambrano Loor, the president of Respondent Zamhern S.A., that orders his arrest and civil commitment wherever he may be found within the jurisdiction of the United States until he has purged himself of his contempt for failing to abide by the Court's prior orders at [ECF Nos. 58, 62, 63 and 66]. *See* [ECF Nos. 67, 78]. For the reasons set forth below, the Court recommends that Petitioner's Motion be **GRANTED** as follows:

### A. Findings of Fact

1. Chiquita commenced this action by filing its Petition to Confirm an International Arbitration Award on June 28, 2021. [ECF No. 1].

2. Chiquita subsequently moved to effectuate service of process through alternative means upon Respondent [ECF No. 31], which the Court granted [ECF No. 38].

3. Respondent was then served with a copy of the Petition in the manner specified by the Court's order granting alternative service on August 31, 2023. [ECF No. 41].

4. Respondent, however, did not respond to the Petition or otherwise defend the action at any point during the proceedings. As such, the Court entered a Final Default Judgment in favor of Petitioner on October 13, 2023. [ECF No. 51].

5. On November 14, 2023, Petitioner served its Requests for Production in Aid of Execution pursuant to this Court's Final Default Judgment [ECF No. 51] and Federal Rule of Civil Procedure 69. Consistent with Federal Rule of Civil Procedure 34, Chiquita's requests for production sought the production of responsive records within 30 days of service.

6. Also, on November 14, 2023, Chiquita served its Interrogatories in Aid of Execution seeking responses within 30 days of service pursuant to this Court's Final Default Judgment and Federal Rules of Civil Procedure 33 and 69.

7. Accordingly, Zamhern was required to issue a response to Chiquita's requests for production and interrogatories in aid of execution on or before December 14, 2023. Zamhern, however, did not issue a response to any of Chiquita's discovery requests in aid of execution.

8. On December 21, 2023, Chiquita filed its Motion to Compel Responses to its Requests for Production in Aid of Execution and to its Interrogatories in Aid of Execution, which were both served on November 14, 2023. [ECF No. 52]. This Motion to Compel also sought an order granting Chiquita the costs and attorneys' fees that it incurred in preparing the Motion to Compel Responses pursuant to Federal Rule of Civil Procedure 37(a)(4)(A).

9. On January 10, 2024, following a hearing on Chiquita's Motion to Compel, the Court entered an Order granting in part and denying in part the Motion to Compel. [ECF No. 58].

10. In this order, the Court directed Zamhern to respond to Chiquita's Requests for Production in Aid of Execution and Interrogatories in Aid of Execution on or before January 24, 2024. This order also directed Zamhern to Pay Chiquita $1,000.00 in reasonable attorney's fees pursuant to Federal Rule of Civil Procedure 37. Zamhern did not comply with this order either.

11. On February 22, 2024, the Court heard argument from Petitioner concerning whether civil contempt sanctions were appropriate against Zamhern due to its failure to abide by the Court's order of January 10, 2024.

12. The Court then entered a paperless order [ECF No. 62] directing Zamhern to fully comply with the order of January 10, 2024, by March 22, 2024, "and [to] pay Petitioner an additional $1,000.00 in reasonable attorneys' fees pursuant to Rule 37 of the Federal Rules of Civil Procedure."

13. This paperless order also specified that Chiquita may file a written motion for civil contempt if Zamhern failed to comply with the Court's orders again. *See* [ECF No. 62].

14. Also, on February 22, 2024, the Court entered another paperless order directing Zamhern to show cause, on or before March 22, 2024, why it should not be held in civil contempt due to its failure to comply with the Court's order that was entered on January 10, 2024. *See* [ECF No. 63]. Zamhern, again, did not comply with the March 22, 2024, deadline, or with any portion of the Court's orders that were entered until that point.

15. Consequently, Chiquita moved for a finding of civil contempt against Zamhern on April 2, 2024. *See* [ECF No. 64].

16. The Court entered an order granting Chiquita's Motion for Civil Contempt sanctions. This order held Zamhern in civil contempt and required Zamhern to pay a $50.00 daily fine for every day that it failed to comply with the Court's previous orders located at [ECF Nos. 58, 62, and 63]. *See* [ECF No. 66].

17. Consistent with its prior violations, Zamhern did not comply with the Court's orders, including the contempt order. Moreover, there is no indication that Zamhern or any of its corporate officials have made efforts to comply with the Court's orders.

18. Most recently, on July 10, 2024, Chiquita sought a writ of bodily attachment for the arrest of nonparty Jose Hernán Zambrano Loor, the President of Respondent Zamhern, S.A., [ECF No. 67]. Petitioner filed a supplemental memorandum in further support of this Motion on November 18, 2024. [ECF No. 78]. The Court held hearings on Petitioner's Motion for Writ of Bodily attachment on November 8, 2024, *see* [ECF No. 74], and on November 19, 2024. *See* [ECF No. 79]. Mr. Zambrano received adequate notice of these hearings, as well as the Court's

orders to show cause, *see* [ECF Nos. 70, 71, 75, 77],[2] but Mr. Zambrano did not respond to the Motion or make an appearance at either hearing.

19. Mr. Zambrano is identified as the president in Zamhern's corporate records. Indeed, Mr. Zambrano personally executed the International Banana Sales Agreement with Chiquita on behalf of Zamhern, *see* [ECF No. 48-1, pp. 11–12, 53–54], that identifies him as the corporate president.

20. Mr. Zambrano is also identified as the corporate president in Zamhern's general corporate information report that is publicly available through Ecuador's Superintendency of Companies, Securities, and Insurance. [ECF No. 78-1, p.2]. This report reflects that Respondent only has two administrative officials: (1) Jose Hernan Zambrano Loor as president; and (2) the general manager, Lider Antono Mendoza Zambrano. [ECF No. 78-1, p.2].

21. Furthermore, Mr. Zambrano is identified as the corporate president in Zamhern's recent general meeting minutes, where it is specified that Mr. Zambrano presides over a March 29, 2024, session in his capacity as president. *See* [ECF No. 78-2].

22. In addition to being Respondent's president, Mr. Zambrano is an international businessman who holds positions in multiple corporate entities within Ecuador and who, according to Petitioner, engages in extensive commercial activities within Ecuador. As noted above, Mr. Zambrano also personally executed on behalf of Zamhern the International Banana Sales Contract

---

[2] Petitioner's counsel explained at the show cause hearing that, although ECF Nos. 71 and 77 state that the show cause order was sent to Zamhern's Florida counsel by both U.S. Mail and e-mail, the show cause order was sent by e-mail only. Counsel confirmed, however, that Petitioner served notice on Mr. Zambrano of the show cause order and the hearing by (1) sending a copy of the order to show cause through international mail to the addresses identified in the Court's order granting motion for alternate service and (2) sending a copy of the order to show cause through e-mail to the e-mail addresses identified in the order granting motion for alternate service. [ECF No. 38].

with Chiquita for the distribution of millions of dollars' worth of bananas. [ECF No. 48-1, pp. 11–12, 53–54].

23.     Furthermore, the evidence furnished by Petitioner reflects that Mr. Zambrano (1) manages multiple corporate entities located in Ecuador in addition to Zamhern, *see* [ECF No. 78-3, pp. 2-6]; (2) that he maintains ongoing commercial relationships with several agricultural exporters, *see* [ECF No. 78-3, pp. 7-8]; (3) that he maintains an active registration of various agricultural properties within Ecuador, *see* [ECF No. 78-3, pp. 2-6]; (4) that he maintains active bank accounts at the following financial institutions in Ecuador: Banco del Pacífico and Banco Pichincha*, see* [ECF No. 78-3, p. 7]; and that Mr. Zambrano has documented control over Zamhern's resources. *See* [ECF Nos. 48-1 and 78-3].

## B. Findings of Law

### 1. Petitioner must demonstrate that nonparty Jose Hernán Zambrano Loor is also in Contempt due to Zamhern's violations of the Court's Orders.

As set forth in the Order granting Petitioner's Motion for Civil Contempt [ECF No. 66], the Court has already concluded that Respondent is in contempt of Court because it has failed to comply with the Court's prior orders at [ECF Nos. 58, 62, 63 and 66]. Petitioner, however, now seeks a writ of bodily attachment against Respondent's president, Jose Hernán Zambrano Loor, a nonparty to these proceedings. As such, Petitioner must establish that civil contempt penalties may be appropriately imposed on Jose Hernán Zambrano Loor due to his status as Zamhern's president and Zamhern's ongoing violation of multiple Court orders. For the reasons set forth below, Petitioner has met its burden of establishing a clear and convincing basis for imposing civil contempt sanctions on Jose Hernán Zambrano Loor due to Respondent Zamhern's ongoing violation of several Court orders.

6

### 2. Mr. Zambrano is Legally Identified with Respondent Zamhern, S.A.

The Court finds that Mr. Zambrano is legally identified with Zamhern because he exercises substantial discretion, control, and influence over Zamhern's affairs such that the two are legally indistinguishable.

Persons or entities who are not parties to an action or in privity with a named party generally may not be brought within the effect of a Court order. *See United States of America. v. Robinson*, 83 F.4th 868, 881 (11th Cir. 2023). A nonparty, however, may be punished in connection with a party's contempt of a court order where the nonparty has assisted in or abetted the party's contemptuous conduct or where the nonparty is legally identified with the contemptuous party. *Id*; *United States v. Abboud*, No. 22-11111, 2024 WL 1654753, at *3 (11th Cir. Apr. 17, 2024). A nonparty is legally identified with a party where there is a close identification of interest between the two such that the nonparty exercises significant control over its interests and actions. *See Robinson*, 83 F.4th at 881; *Abboud*, No. 22-11111, 2024 WL 1654753, at *3. Applying the foregoing principles here, there is no doubt that Mr. Zambrano is legally identified with Zamhern.

As an initial matter, Mr. Zambrano is identified as the corporate president in Zamhern's corporate records. For example, the International Banana Sales Agreement that Mr. Zambrano personally executed on behalf of Zamhern, *see* [ECF No. 48-1, pp. 11–12, 53–54], identifies him as the corporate president. Mr. Zambrano is also identified as the corporate president in Zamhern's general corporate information report that is publicly available through Ecuador's Superintendency of Companies, Securities, and Insurance. Moreover, Zamhern's general corporate information report reflects that Respondent only has two administrative officials: (1) Jose Hernan Zambrano Loor as president; and (2) the general manager, Lider Antono Mendoza Zambrano. *See* [ECF No.

78-1, p.2]. Mr. Zambrano is also identified as the corporate president in Zamhern's recent general meeting minutes, where it is specified that Mr. Zambrano presides over a March 29, 2024, session in his capacity as president. *See* [ECF No. 78-2].

In cases involving similar facts to these proceedings, multiple courts have concluded that nonparty corporate officials who exercise substantial discretion, control, and influence over a corporation's affairs—like Mr. Zambrano does with Zamhern—are legally identified with the corporate party for the purposes of enforcing court orders. *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1352 (Fed. Cir. 1998) (upholding district court's conclusion that nonparty corporate official was legally identified with corporate party and subject to contempt sanctions based on corporate party's violation of an injunction where nonparty corporate official held majority ownership of shares in the corporate party, he was the president of the corporate party (although he later resigned from his position as president), and he represented the corporate party's interests in legal proceedings.); *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) ("[A]n order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents[.]"); *ADT LLC v. Sec. Networks, LLC*, No. 12-81120-CIV, 2016 WL 8943163, at *5 (S.D. Fla. June 8, 2016) ("Robert Harris, is also bound by the injunction entered against Vision because in his capacity as CEO and sole managing member of Vision, his liability is the same as if he had been a named party in the underlying lawsuit." (citations omitted)); *Abboud*, No. 22-11111, 2024 WL 1654753, at *3.

Accordingly, Mr. Zambrano is legally identified with Zamhern and equally subject to the Court's prior orders at [ECF Nos. 58, 62, 63 and 66].

### 3. Mr. Zambrano has the Financial Ability to Comply with the Court's Orders.

The Court may enter a writ of bodily attachment against Mr. Zambrano because he is an international businessman who possesses the financial resources to personally comply or direct Zamhern to comply with the Court's prior orders at [ECF Nos. 58, 62, 63 and 66]. *See Disabilty Advocs. & Counseling Grp., Inc. v. Floval Oil Corp.*, No. 05-23238-CIV, 2011 WL 13174201, at *1 n.1 (S.D. Fla. Sept. 20, 2011) (rejecting contemnor's contention that it was unable to pay contempt fine because the financial records it submitted to the court did not show a lack of financial ability to make payments).

As noted above, Mr. Zambrano is Zamhern's president, an active company in Ecuador that entered an International Banana Sales Contract with Chiquita for the distribution of millions of dollars worth of bananas. *See* [ECF No. 48-1, pp. 11–12, 53–54]. Furthermore, Petitioner has submitted evidence showing that Mr. Zambrano holds positions in other corporate entities within Ecuador, which demonstrates he is a businessman with significant financial means. Indeed, Petitioner produced evidence that shows Mr. Zambrano (1) manages multiple corporate entities located in Ecuador in addition to Zamhern, *see* [ECF No. 78-3, pp. 2–6]; (2) that he maintains ongoing commercial relationships with several agricultural exporters, *see* [ECF No. 78-3, pp. 7–8]; (3) that he maintains an active registration of various agricultural properties within Ecuador, *see* [ECF No. 78-3, pp. 2–6]; (4) that he maintains active bank accounts at the following financial institutions in Ecuador: Banco del Pacífico and Banco Pichincha, *see* [ECF No. 78-3, p. 7]; and that Mr. Zambrano has documented control over Zamhern's resources. *See* [ECF Nos. 48-1 and 78-3].

Based on the assets he controls, the Court concludes that Mr. Zambrano possesses the financial means to comply with the Court's prior orders directing Zamhern to issue responses to

Petitioner's discovery requests in aid of execution and to pay the pecuniary penalties imposed by the Court. [ECF Nos. 58, 62, 63 and 66].

### 4. Mr. Zambrano has not shown an inability to comply with the Court's Orders.

The Court finds that Mr. Zambrano has failed to demonstrate that he is unable to comply with the Court's prior orders, as required to avoid civil contempt sanctions for noncompliance under governing Eleventh Circuit authority. "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992). After the party seeking civil contempt makes a *prima facie* showing that the alleged contemnor violated a valid court order, the burden shifts to the alleged contemnor to demonstrate that compliance is impossible. *See id* (citing *United States v. Rylander*, 460 U.S. 752, 756 (1983)). To succeed on an inability to comply defense, the alleged contemnor must do more than simply claim that compliance is impossible. *See United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984). Instead, the alleged contemnor must make an evidentiary showing that he has made all reasonable efforts to comply with the court order he is seeking to avoid. *Id*. The burden of proving that an alleged contemnor can comply with a valid court order shifts back to the party seeking civil contempt sanctions only if the alleged contemnor has made a sufficient showing that he is unable to comply. *Id* at 1529.

As set forth in the Court's order granting Petitioner's motion for civil contempt [ECF No. 66], Petitioner has made the requisite *prima facie* showing that Mr. Zambrano has violated multiple valid Court orders. In contrast, Mr. Zambrano has not met his burden of proving that he lacked the financial ability to comply with the Court's prior orders at any time before or after the Court entered the contempt order in this case. Mr. Zambrano has also failed to show that he has made

10

any reasonable efforts to comply with the Court's orders. Instead, Petitioner has furnished evidence that clearly shows Mr. Zambrano has sufficient funds and assets at his disposal to comply with the Court's orders. Chiquita has also demonstrated that Mr. Zambrano can direct Zamhern to respond to Petitioner's discovery requests in aid of execution, but he has simply decided to ignore the Court's orders.

Accordingly, the Court finds that Petitioner has presented clear and convincing evidence that Mr. Zambrano possesses the ability to comply with the Court's orders, and Mr. Zambrano has failed to make any showing that he is unable to comply. *See Commodity Futures Trading Comm'n*, 950 F.2d at 1530 (upholding trial court's contempt finding and rejecting inability defense where contemnor failed to demonstrate that he made "all reasonable efforts" to comply and lacked credibility); *S.E.C. v. Kenton Cap., Ltd.*, 983 F. Supp. 13, 16 (D.D.C. 1997) (concluding that contemnor failed to prove his financial inability to comply defense because he did not make reasonable efforts to comply with the court's orders, he lacked credible documentation demonstrating financial distress, and he had sufficient funds to comply with the order at issue).

**5.  A Writ of Bodily Attachment is Necessary to Enforce the Court's Orders.**

Based on Respondent's pattern of noncompliance to date, the Court finds that a writ of bodily attachment is the only remedy that is likely to compel Mr. Zambrano to comply with the Court's orders because all previous sanctions on Zamhern have been unavailing. To date, Zamhern has not paid any portion of the ongoing $50.00 daily fine that the Court imposed, *see* [ECF No. 66] or responded to any of Petitioner's discovery requests in aid of execution. Furthermore, Zamhern has not shown any intention to comply since the Court entered the contempt order, more than five months ago. This deliberate evasion of the Court's prior orders demonstrates that

11

pecuniary penalties will not achieve their intended effect. As such, a writ of bodily attachment is not only appropriate but necessary, as no other remedy has proven effective in this case.

The Court may issue a writ of bodily attachment for the arrest of a foreign contemnor like Mr. Zambrano to ensure compliance with its orders, particularly where, as here, less severe sanctions have been unavailing, and the international contemnor actively exploits his foreign status to circumvent legal obligations in the United States. *See F.T.C. v. Verity Int'l, Ltd.*, 140 F. Supp. 2d 313, 318 (S.D.N.Y. 2001); *CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*, No. 12 CIV. 8087 CM, 2013 WL 324061, at *3 (S.D.N.Y. Jan. 24, 2013). By issuing this writ of bodily attachment, the Court will exert meaningful pressure on Mr. Zambrano to comply with its orders because he will be restricted from travelling to the United States, where it is believed he maintains active business interests. Accordingly, based on Zamhern's pattern of noncompliance, the Court finds that a writ of bodily attachment against Mr. Zambrano is the only measure that will uphold the integrity of the Court's orders and vindicate its authority.

**6. The Court May Enter a Writ of Bodily attachment that has Nation-Wide Reach.**

Federal Rule of Civil Procedure 4.1 permits the Court to enter a writ of bodily attachment against Mr. Zambrano for his arrest and civil commitment anywhere within the jurisdiction of the United States. *See CE Int'l Res. Holdings LLC,* 2013 WL 324061, at *2–3; *Verity Int'l, Ltd.,* 140 F. Supp. 2d at 318. Federal Rule of Civil Procedure 4.1 provides, in relevant part, as follows: "[a]n order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and enforced in any district." Fed. R. Civ. P. 4.1(b). Multiple courts have construed the text of Federal Rule of Civil Procedure 4.1 to permit district courts to enter a writ of bodily attachment against a foreign contemnor where, as here, the case at issue seeks to enforce federal law. *See CE Int'l Res. Holdings LLC*, 2013 WL 324061, at *2–3; *Verity Int'l, Ltd.*, 140 F.

12

Supp. 2d at 318. The Court has subject matter jurisdiction over these proceedings through federal question jurisdiction because the Petition seeks confirmation of an international arbitration award pursuant to the Federal Arbitration Act. *See* 9 U.S.C. § 207. As such, a writ of bodily attachment against Mr. Zambrano would be issued in this case to "enforce federal law." The Court may therefore enter a writ of bodily attachment for the arrest and civil commitment of Mr. Zambrano anywhere within the jurisdiction of the United States pursuant to Federal Rule of Civil Procedure 4.1.

### C. Conclusion

Based on the foregoing, it is **RECOMMENDED** that Petitioner's Motion for Writ of Bodily Attachment against Respondent Zamhern S.A.'s president, Jose Hernán Zambrano Loor [ECF No. 78] be **GRANTED**. The Undersigned also **RECOMMENDS** that Jose Hernán Zambrano Loor be subject to arrest and civil commitment wherever he may be found within the jurisdiction of the United States until Mr. Zambrano has purged himself of his contempt by complying with the Court's orders at [ECF Nos. 58, 62, 63 and 66]. This Court shall issue the Writ of Bodily attachment described herein by separate order. The Clerk is further directed to send, via mail, a copy of this Report and Recommendation to Respondent and nonparty Jose Hernán Zambrano Loor at the address(es) listed below.

**DONE AND ORDERED** in Miami, Florida this 22nd day of November 2024.

_____
Lisette M. Reid
UNITED STATES MAGISTRATE JUDGE

cc:

Zamhern S.A.
Av. Agustin Freire, Ciudadela La Herradura,
Manzana 7, Solar 2 (Diagonal Bco. Bolivariano)
Guayas, Daule Guayaquil, Ecuador

Zamhern S.A.
Ciudadela La Garzota
Parroquia Tarqui Manzana 29, Solar 2
Guayas, Guayaquil, Ecuador

Zamhern S.A.
Edificio Trade Building
Ave. Joaquín J. Orrantia González y 1 Pasaje 1A NE
Calle 14A NE
Guayas, Guayaquil, Ecuador

Zamhern S.A.
c/o Law Offices of Alexis Gonzalez, P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, Florida 33133

Counsel of record

U.S. District Judge Roy K. Altman